NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2026 IL App (4th) 250702-U

NO. 4-25-0702

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
July 15, 2026
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Menard County |
| JUSTIN WOOLSEY, | ) | No. 22CF10 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Michael L. Atterberry, |
| | ) | Judge Presiding. |

JUSTICE KNECHT delivered the judgment of the court.
Justices Cavanagh and Harris concurred in the judgment.

**ORDER**

¶ 1     *Held*: The appellate court granted counsel's motion to withdraw because no meritorious issue could be raised on appeal.

¶ 2     Defendant, Justin Woolsey, appeals (1) his two convictions of driving while his driver's license was revoked (DWLR) (625 ILCS 5/6-303(d-3) (West 2022)) and (2) concurrent sentences of four years' imprisonment. The trial court appointed the Office of the State Appellate Defender (OSAD) to represent defendant. OSAD moves to withdraw as counsel, arguing defendant's appeal presents no potentially meritorious issues for review. We grant the motion and affirm.

¶ 3                                    I. BACKGROUND

¶ 4                              A. Pretrial Proceedings

¶ 5     On April 19, 2022, defendant first appeared in court with private counsel. He was

arraigned and pleaded not guilty. The trial court advised defendant, who was not in custody, he had to appear for court, and if he did not, he would be tried *in absentia*. Defendant told the court he knew this.

¶ 6 Three months later, defendant again appeared in court, and the trial court advised defendant he would be tried *in absentia* if he failed to appear for trial. The court asked defendant if he understood, and defendant replied he did. The court then asked defendant if he had any questions, and defendant said he did not.

¶ 7 A month later, defendant (1) was advised he was eligible for an extended term sentence, given his criminal history, and (2) waived his right to a jury trial. The trial court told defendant he could not ask for a jury trial once his waiver was entered. Defendant assured the court he understood. Evidencing defendant's waiver was a preprinted form defendant signed. Next to a checked box on the signed form was, "Waives the right to Trial by Jury."

¶ 8 Five months later, defendant, who was represented by a different attorney from the private firm he retained, again waived his right to a jury trial. Before accepting the waiver, the trial court asked defendant if he (1) had talked to counsel about it, (2) was satisfied with those discussions, and (3) received answers to his questions. Defendant answered affirmatively. Evidencing defendant's waiver was a preprinted form defendant signed. Like the previously signed waiver form, next to the checked box on the signed form was, "Waives the right to Trial by Jury." The court found defendant's jury waiver knowingly and voluntarily entered. The court then admonished defendant he needed to be in court on the next court date. Defendant assured the court he would be there.

¶ 9 Defendant failed to appear in court on the next court date, and a bench warrant was issued.

¶ 10    Defendant appeared on the next court date, and the parties discussed obtaining a global resolution of all the pending cases defendant had, including those pending in other counties. At the end of the proceedings, the trial court told defendant he needed to be present on the next court date. Defendant replied, "Yes, sir." The court asked defendant if he had any questions, and defendant said he did not.

¶ 11    Defendant failed to appear on the next court date, and a bench warrant was issued.

¶ 12    On the subsequent court date, a warrant for defendant's arrest was issued because he failed to appear. The condition of defendant's release was that he had to appear in court on the next court date.

¶ 13    Defendant was absent on the next two court dates. Private counsel withdrew, and the trial court appointed the public defender to represent defendant.

¶ 14    Three days later, defendant appeared in court. When the trial court mentioned defendant waived a jury trial, defendant told the court he never did so.

¶ 15    Two months later, while the parties were in the midst of plea negotiations, the trial court set a trial date. In doing so, it advised defendant he had to be in court at 9 a.m. on April 30, 2025, for trial. The court told defendant he would be tried *in absentia* if he failed to appear, meaning the trial would be held in his absence. The court asked defendant if he understood, and defendant said he did. The court then inquired whether defendant had any questions. Defendant said he did not.

¶ 16                              B. Trial

¶ 17    Defendant failed to appear for trial. The attorney appointed to represent defendant advised the trial court he had reviewed the file. The attorney continued, "[D]espite my requests, particularly in the last contact[,] *** [defendant] never advised me of what his potential, if any,

defenses were." The court interrupted counsel, noted the case had been pending for quite some time, and held a trial *in absentia*.

¶ 18      At the trial, Officer Alexander Thomson testified he was on patrol on March 14, 2022, when he saw defendant fail to stop at a stop sign twice while driving a vehicle. Thomson learned from dispatch defendant's driver's license was revoked. Defendant confirmed his driver's license was revoked when he was talking to Thomson's partner. On cross-examination, Thomson reiterated defendant was driving the vehicle he saw.

¶ 19      Deputy John Staab testified he was on patrol on March 15, 2022, when he saw a truck pulling a trailer followed by a blue passenger car. Both vehicles stopped in the middle of the roadway, blocking an entire lane of traffic. Staab activated his emergency lights, and while approaching the vehicles, he saw defendant exit the driver's side of the blue passenger vehicle. Staab knew defendant's driver's license was revoked because (1) he had had previous contact with defendant, (2) he was on shift when Thomson arrested him the day before, and (3) defendant admitted driving the car that day. Nevertheless, Staab asked dispatch to check the status of defendant's driver's license. Dispatch verified defendant's driver's license was revoked. Once verified, Staab arrested defendant. On cross-examination, Staab confirmed defendant was driving that day.

¶ 20      Certified copies of defendant's driving abstract admitted at trial revealed defendant's driver's license was revoked, effective January 30, 2011, and remained revoked on March 14 and 15, 2022. The abstract also showed defendant was convicted of DWLR at least three times previously, in 2010, 2013, and 2014, and the basis for the revocations was convictions for driving while under the influence (DUI).

¶ 21      The trial court found defendant guilty of both counts of DWLR. In so doing, the

court observed the trial was held *in absentia*. The court noted it personally told defendant when the trial would be held, and defendant assured the court he would attend. Moreover, the court said defendant was given a copy of the court's order setting the trial date and time. The court asserted defendant, who was familiar with court proceedings, having had encounters with the court over the past 5 to 10 years, was told, if he failed to appear, a trial *in absentia* would be held. The court stated despite that, defendant failed to appear, like he had done on a number of occasions in the last several years.

¶ 22                                      C. Sentencing

¶ 23          Before the sentencing hearing began, defendant, who was still represented by appointed counsel, asked for a continuance because he wanted to get a second opinion about his case from another attorney. The State objected, and the trial court denied the motion, noting defendant had failed to appear seven times during the proceedings.

¶ 24          Defendant's presentence investigation report, which was admitted without objection, showed defendant was charged with five offenses when he was a juvenile. These offenses ranged from criminal damage to property to theft and battery. As an adult, defendant was charged with around 58 crimes. These offenses were mostly traffic offenses and included DWLR, speeding, and driving without insurance. The nontraffic charges included residential burglary, resisting arrest, and aggravated domestic battery.

¶ 25          Dara Gilbert, a chief probation officer, and Andrew Friedrich, a representative of the Office of Statewide Pretrial Services, testified for the State. Their testimony confirmed defendant had been charged with a number of offenses and was generally compliant with orders on pretrial release awaiting trial in this case.

¶ 26          Joe Meyers, defendant's friend and employer, testified he drove defendant to work

and did not know he had a number of pending cases. Meyers stated he was trying to figure out how defendant could get his driver's license back.

¶ 27        In his statement in allocution, defendant, who indicated he was homeless, asserted he missed court because he was in custody. He said he "ha[d] been doing [his] sanctions" the last two years, and once "he could *** breathe a little bit," he obtained employment. He admitted he had an extensive criminal history but noted some of his cases were 20 years old.

¶ 28        The State asked for the maximum sentence of six years, arguing that was appropriate because these two DWLR convictions were defendant's fifth and sixth DUI-related offenses. The State observed the trial court had already provided progressive discipline and a more severe sentence was warranted given defendant's "atrocious" driving record. Defendant asked for a more lenient sentence.

¶ 29        The trial court sentenced defendant to concurrent terms of four years' imprisonment on each DWLR conviction. In doing so, the court observed defendant was always respectful and obeyed the court's rules when he appeared in court. The "biggest problem" was defendant did not always show up for court and had an extensive criminal history. Given his history and poor performance while on probation in the past, the court found defendant was "quite simply not a candidate for probation" now. That said, the court did not believe a maximum sentence was warranted, as many of defendant's prior offenses were at least 10 years old. However, the court noted it had imposed a three-year sentence in the past, which evidently did not deter defendant from committing DWLR.

¶ 30        Eight days after the trial court sentenced him, defendant filed a notice of appeal. We note defendant also filed a motion to withdraw his guilty plea 34 days after he was sentenced. However, that untimely motion does not divest this court of jurisdiction. See *People v. Orahim*,

2019 IL App (2d) 170257, ¶ 5 ("[The] defendant's untimely motion to withdraw his plea did not renew the trial court's jurisdiction or extend his time to appeal.").

¶ 31        This timely appeal followed.

¶ 32                                II. ANALYSIS

¶ 33        On appeal, OSAD moves to withdraw. Counsel for OSAD asserts she (1) read the record on appeal, (2) reviewed the facts and applicable law, and (3) discussed the case with another attorney. OSAD concludes an appeal in this case would be without arguable merit. This court informed defendant of his opportunity to respond to the motion. Defendant filed a motion to obtain the record, which this court denied, directing counsel to provide defendant with the necessary documents from the record. Defendant did not file a response to counsel's motion to withdraw.

¶ 34        OSAD submits it would be frivolous to argue (1) the evidence was insufficient to prove beyond a reasonable doubt defendant was guilty of the two counts of DWLR, (2) defendant did not knowingly and voluntarily waive his right to a jury trial, (3) defendant was not properly admonished about a trial *in absentia*, and (4) defendant's sentence was excessive. We agree this appeal presents no nonfrivolous issues.

¶ 35        First, the evidence was sufficient to prove defendant guilty of both counts of DWLR. When presented with a challenge to the sufficiency of the evidence, it is not our function to retry the defendant. *People v. Collins*, 106 Ill. 2d 237, 261 (1985). Rather, " 'the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (Emphasis in original.) *Id.* (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). In reviewing the evidence in this way, we should not substitute our judgment for that of the trier of fact, who is responsible for weighing the evidence, assessing the credibility of witnesses, resolving

conflicts in the evidence, and drawing reasonable inferences therefrom. *People v. Sutherland*, 223 Ill. 2d 187, 242 (2006). However, we must set aside a defendant's conviction if a careful review of the evidence reveals that it was so unreasonable, improbable, or unsatisfactory as to create a reasonable doubt of the defendant's guilt. *People v. Evans*, 209 Ill. 2d 194, 209 (2004).

¶ 36        To prove defendant guilty of DWLR as charged here, the State had to establish defendant operated a motor vehicle while his driver's license was revoked and had been convicted at least three times previously of DWLR based on DUI. 625 ILCS 5/6-303(d-3) (West 2022). That was proved beyond a reasonable doubt. The evidence, including defendant's admissions, confirmation from dispatch, and defendant's driving abstract, established defendant's driver's license was revoked on both March 14 and 15, 2022, which are the dates of the two offenses. The evidence also established Thomson and Staab saw defendant driving on those dates. Defendant's abstract showed he had been convicted of DWLR at least three times previously and those DWLR convictions were based on DUI. To the extent OSAD intimates a potential problem arose when trial counsel did not put forth a defense, we note trial counsel, on the day of trial, told the court defendant did not provide him with any potential defenses. We believe counsel did the best he could with what was in the record. Given all of this, raising a reasonable doubt claim would be without merit.

¶ 37        Second, defendant knowingly and voluntarily waived his right to a jury trial. The right to a trial by a jury is a fundamental right guaranteed by the federal Constitution (U.S. Const., amends. VI, XIV) and the Illinois Constitution of 1970 (Ill. Const. 1970, art. I, §§ 8, 13)." "[A]n Illinois criminal defendant's right to a trial by jury includes the right to waive a jury trial. *People v. Bannister*, 232 Ill. 2d 52, 65 (2008); see 725 ILCS 5/103-6 (West 2022). "[T]o be valid, the defendant must make the jury waiver knowingly and voluntarily." *Bannister*, 232 Ill. 2d at 65; see

- 8 -

725 ILCS 5/103-6 (West 2022).

¶ 38            "[A] trial court [has] the duty of ensuring that a defendant waives the right to a jury trial expressly and understandingly." *Bannister*, 232 Ill. 2d at 66. "However, a trial court need not give any specific admonition or advice for a defendant to make an effective jury waiver." *Id.* Rather, "[t]he determination of whether a jury waiver is valid *** depends on the facts and circumstances of each particular case." *Id.* Although a written jury waiver is not dispositive of whether a defendant knowingly and voluntarily waived a jury trial, it "memorializes the defendant's decision" and aids a reviewing court in assessing "whether a defendant's jury waiver was made understandingly." *Id.* We review *de novo* whether defendant's jury waiver was valid, as the facts are not in dispute. *Id.*

¶ 39            We conclude defendant knowingly and voluntarily waived his right to a jury trial. Although defendant claimed during the proceedings he never waived a jury trial, the record clearly rebuts any such contention. Specifically, defendant signed two forms evidencing the waiver of his right to a jury trial. In court, defendant assured the trial court he was informed of his right to have a jury trial, discussed that right with his attorney, decided to waive that right, had no questions about doing so, and knew he could not have a jury trial once that waiver was made. Given that, we agree with counsel that any claim defendant did not knowingly and voluntarily waive his right to a jury trial would be without arguable merit.

¶ 40            Third we find defendant was properly admonished about being tried *in absentia*. "[A] defendant has a right to be present at all stages of his trial." *People v. Phillips*, 242 Ill. 2d 189, 194 (2011). "[A] defendant in Illinois has a statutory right *** to be admonished as to the possible consequences of failing to appear in court when required." *Id.* at 195. Specifically, section 113-4(e) of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/113-4(e) (West 2022))

provides the following:

> "If a defendant pleads not guilty, the court shall advise him at that time or at any later court date on which he is present that if he *** is released on bond and fails to appear in court when required by the court that his failure to appear would constitute a waiver of his right to confront the witnesses against him and trial could proceed in his absence."

While a court must orally admonish a defendant pursuant to section 113-4(e) of the Code, only "substantial compliance" with that section is required to permit trials *in absentia*. *Phillips*, 242 Ill. 2d at 199. "[W]hether the trial court substantially complied with section 113-4(e) [presents] a question of law that we review *de novo*." *People v. Hietschold*, 2025 IL 130716, ¶ 20.

¶ 41        Here, the trial court substantially admonished defendant three times that he had to be in court for his trial, and if he failed to appear, a trial in his absence would be held. See *People v. Broyld*, 146 Ill. App. 3d 693, 698 (1986) (finding the defendant was substantially admonished about being tried *in absentia* even though she was not told, pursuant to section 113-4(e) of the Code, she could not confront witnesses against her if she failed to appear for trial). Defendant, who had an extensive familiarity with court proceedings, assured the court he understood and had no questions. Additionally, defendant was given a copy of the order setting the date and time of his trial and told the court he would be in attendance. Defendant, who was represented by counsel, failed to appear and only offered a reason for his absence when making his statement in allocution. The court found the excuse unavailing. Under the circumstances of this case, we conclude any argument defendant was not properly admonished about being tried *in absentia* would be without merit.

¶ 42        Last, defendant's sentence was not excessive. The Illinois Constitution provides

that "[a]ll penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." Ill. Const. 1970, art. 1, § 11. A statutorily authorized sentence is presumptively proper, and we may not disturb the trial court's decision absent an abuse of discretion. *People v. Musgrave*, 2019 IL App (4th) 170106, ¶ 56. "A trial court's sentence is an abuse of discretion if it is greatly at odds with the spirit and purpose of the law or is manifestly disproportionate to the nature of the offense." *Id.*

¶ 43 Defendant was convicted of two counts of DWLR, which are Class 4 felonies. See 625 ILCS 5/6-303(d-3) (West 2022). Because of defendant's record, he was subject to an extended term sentence between three and six years' imprisonment. See 730 ILCS 5/5-4.5-45(a) (West 2022). (We note the record reflects the parties and the trial court believed the term was between one and six years.) Defendant's four-year sentence falls one year over the minimum sentence for which he was eligible. Given defendant's "atrocious" driving record and failure to not drive while his license was revoked after more lenient sentences had been imposed, we cannot conclude the trial court's concurrent four-year sentences on each conviction of DWLR were excessive. Thus, any claim defendant's sentence was excessive lacks merit.

¶ 44 As a result, we agree with OSAD there is no meritorious argument to be raised on appeal.

¶ 45                                   III. CONCLUSION

¶ 46 For the reasons stated, we grant OSAD's motion to withdraw and affirm the trial court's judgment.

¶ 47 Affirmed.